HAUSER v. GEORGE J. JUST CO.

(Supreme Court, Appellate Term. April 8, 1911.)

1. MASTER AND SERVANT (§ 279*)—MASTER'S LIABILITY—PERSON ENGAGED IN SUPERINTENDENCE.

In an action by a servant for personal injuries, evidence *held* sufficient to sustain a finding that a person employed by the master, and under whose orders plaintiff worked, was exercising superintendence, within the meaning of Labor Law (Consol. Laws 1909, c. 31) § 200, subd. 2.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 279.*]

2. MASTER AND SERVANT (§ 279*)—ACTION FOR INJURIES—EVIDENCE—NEGLIGENCE OF SUPERINTENDENT.

Evidence in an action by a servant for personal injuries *held* to sustain a finding that the injury was caused by the negligence of defendant's superintendent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Frank J. Hauser against the George J. Just Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Frank V. Johnson (Samuel L. Sargent, of counsel), for appellant.
Francis X. McCollum (William Edgar Weaver, of counsel), for respondent.

SEABURY, J. The plaintiff sues to recover damages for personal injuries. The plaintiff was in the employ of the defendant as an iron worker. The defendant was engaged in the erection of a building on the southeast corner of Ninety-First street and Third avenue. At the south end of the cellar of the building was a derrick. It was made of steel, and consisted of a mast, held erect by seven "guys," and a boom. It was about 85 feet high. The boom was about 2 feet wide and was made of steel lattice. On the boom were two blocks, on which were hooked the wire cables which connected the boom with the steam engine, by which the derrick was operated. From the boom hung two "load chains," to each of which a hook was attached. The derrick was capable of being moved in two ways. One way was by moving the boom from a position at right angles to the mast to a position where it was almost parallel with the mast. The other movement was effected by turning the whole derrick by means of a lever at the base. The position of the "load chains" was necessarily affected by either of these movements.

On the day of the accident the defendant's employés were engaged in unloading a truck of steel beams, which was in the street, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

placing them in the cellar of the building. The plaintiff claims that he was instructed by the defendant's superintendent to "ride the chains." This he did by placing his feet in the hooks attached to the chains and grasping the chains for support. The purpose of having a man perform this feat was twofold. First, it enabled him to prevent the hooks getting caught in the steel lattice work of the boom; and, secondly, in adding weight to the chains, it facilitated the work of lowering them to the ground. The evidence shows that when a derrick was being operated it was customary to regulate its movements by signals given to the engineer. The signal usually given was to "boom up," which meant that the boom should be brought almost parallel with the mast. When this movement had been accomplished, it was customary to give the second signal, "Go ahead." In response to this signal the derrick was turned at the base by means of a lever. This turning of the derrick caused the chains to swing out, over the building which was being erected, into the street, to which they might then be lowered and "pick up" the steel beams, which were upon the truck.

After the plaintiff had placed his feet in the hooks attached to the chains, the signal to "boom up" was given to the engineer, and as a result the end of the boom furthest away from the mast was raised, until the boom was almost parallel with the mast. This movement left the plaintiff "riding the chains" about 40 feet in the air, and swinging to and fro. As a result of this swinging movement, one of the hooks upon which the plaintiff was standing caught in the steel lattice work of the boom. While the plaintiff was in this precarious position, the derrick was turned from below, without any signal having been given, and the plaintiff's foot was crushed. The plaintiff shouted to the engineer to stop the engine, and this was done and the chains lowered, and the plaintiff was taken to a hospital.

The negligence of the defendant is predicated upon its failure to have some one watching the work who could give the signals in response to which the engine should be started. The evidence justified the conclusion that the giving of proper signals was necessary to the reasonably safe performance of this work. If the derrick had been operated pursuant to proper signals, the accident in all probability would not have happened. No reasonably careful person would have given the signal to turn the derrick while the hook upon which the plaintiff was standing was caught in the lattice work of the boom. The evidence makes it clear that this is the work which Berry, the superintendent, should have performed. He instructed the plaintiff to "ride the chains," but neglected to watch the work and give the proper signals. At the critical moment Berry had his back turned to the engineer and was on the ladder going out to the street.

The defendant urges that the accident was caused by the negligence of the plaintiff, or the negligence of the engineer, or the negligence of the man employed in turning the derrick with the lever. In short, according to the defendant's contention, everybody except his superintendent in charge of the work seems to have been careless. The argument is suggestive of a desire to avoid liability upon any pretext, rather than explanatory of the manner in which the accident occurred.

So far as the plaintiff is concerned, he merely did as he was told to do. The contention that he need not have done this work is not sustained by the proof. Nor can the blame for the accident be justly imputed to the engineer or the man who turned the derrick. Both of these men were fully occupied in attending to their respective duties. Even if it was possible for them, from the place where they were located, to have seen the position of the plaintiff, which seems improbable, they were so fully occupied with their own work that they had no opportunity to do so. The cause of the accident is apparent, and was the negligence of the superintendent.

Under subdivision 2 of section 200 of the labor law (Consol. Laws 1909, c. 31) the defense of common employment is taken from the employer when injury results to an employé through the negligence of one "exercising superintendence." Bellegrade v. Union Bag & Paper Company, 90 App. Div. 577, 86 N. Y. Supp. 72, affirmed 181 N. Y. 519, 73 N. E. 1119. The trial justice, who determined the issues of fact in this case, [1] was fully justified by the evidence in finding that Berry was "exercising superintendence," within the meaning of the statute, and [2] that the accident was caused solely by his negligence in failing properly to perform his duty.

Judgment affirmed, with costs. All concur.